LORA LEE DRESS CO., INC., complainant-respondent,

*v.*

INTERNATIONAL LADIES' GARMENT WORKERS UNION, LOCAL No. 85, et al., defendants-appellants.

[Argued February 10th, 1941. Decided April 25th, 1941.]

*Messrs. Isserman, Isserman & Kapelsohn,* for the defendants-appellants.

*Messrs. Quinn & Doremus* and *Mr. Vincent J. McCue,* for the complainant-respondent.

The opinion of the court was delivered by

DONGES, J.

This is an appeal from a decree of the Court of Chancery restraining and enjoining the defendants International

Ladies' Garment Workers Union, Local No. 85, Alfred Belskin, Mae Powell, Harry Friedman, Frank Tober, Josephine Del Vecchio, Armideo Tallerico and Bessie Hammerschlag "from all picketing and other strike activities," and imposing costs and a counsel fee upon the defendants.

The situation presented by stipulation on final hearing is that complainant was incorporated on November 29th, 1938, at the instance of William Schwartz and Gladdy-Colleen, Inc.; that Schwartz also controls Gladdy-Colleen, Inc., which was incorporated July 22d, 1938, in New York; that prior to November 29th, 1938, Schwartz, through Gladdy-Colleen, Inc., was engaged in the manufacture and sale of women's dresses; that said Schwartz is now engaged in the same business through Gladdy-Colleen, Inc., and complainant corporation; that some of the equipment of Gladdy-Colleen was removed to Long Branch and has been, and still is, used by complainant in the manufacture of dresses at its plant at Long Branch; that Gladdy-Colleen was a member of the National Dress Manufacturers Association of New York City which had entered into an agreement with International Ladies' Garment Workers Union and the Joint Board of Dress & Waist Makers Union of Greater New York; that on November 30th, 1938, Gladdy-Colleen resigned from the association and, therefore, was no longer bound by the agreement between that association and the union; that the agreement just referred to was to expire on January 13th, 1939, but on December 30th, 1938, was extended to January 31st, 1941; that on January 31st, 1939, the union called a strike against Gladdy-Colleen because of the manufacture of dresses by non-union members; that sixteen of approximately twenty employes of Glady-Colleen went on strike, and thereupon picketing and other strike activities were begun in New York City; that, upon the discovery by the union that complainant was being used by Schwartz and Glady-Colleen in its manufacturing processes, the picketing and other peaceful union activities were extended to the complainant's plant at Long Branch; that members of the Long Branch local union, peacefully and without obstruction, picketed and distributed circulars, two members distributing circulars and two carrying a

banner which read "Lora Lee Dress Co., Inc., is Unfair to
Organized Labor. International Ladies' Garment Workers
Union Local No. 85;" that the pamphlets distributed did not
refer to the company or to Schwartz's other company, but
merely dealt with union purposes and aims; that the activi-
ties of the union also included, peacefully and without
obstruction, the solicitation of complainant's employes to join
the union; that no acts of violence or intimidation were
engaged in, but that the picketing and solicitation were done
without recourse to coercion, but by discussion and entreaty.

The learned Vice-Chancellor held that the object of the
picketing was to assist the union to aid the ends of the strike
in New York by compelling Gladdy-Colleen to again become
a party to an agreement for a closed shop; that the strike
was for an illegal purpose and that all activities in further-
ance thereof are illegal; that the corporations were entirely
dis-associated and that, inasmuch as there was no strike at the
Long Branch plant, there could be no picketing there; and
that the "pickets are intermeddlers." Citing *Feller* v. *Local,
No. 144, &c., 121 N. J. Eq. 452.*

The instant case, in its essential facts, is similar to *Heine's,
Inc.,* v. *Truck Drivers' and Helpers' Union, &c., et al., 129
N. J. Eq. 308,* decided April 7th, 1941. In that case, Chief-
Justice Brogan, speaking for this court, said:

"One further point was made by the defendants. Relying
on *Thornhill* v. *Alabama, 310 U. S. 88,* and *Carlson* v. *Cali-
fornia, 310 U. S. 106,* they contended that their activities,
unaccompanied by violence, were an exercise of their right
of freedom of speech and of the press guaranteed to the indi-
vidual by our Federal Constitution and secured to him against
invasion by state statute by the Fourteenth Amendment
thereto. As to this the Vice-Chancellor held these cases were
not controlling for the reason that both were concerned with
'penal legislation,' in the former case a statute of the State
of Alabama, and in the latter an ordinance of Shasta county,
California, which prohibited picketing generally. But
assuredly the federal Supreme Court passed upon the prin-
ciple which is the underlying question here. And these cited
cases hold that a statute or an ordinance which prohibited

picketing *as such* was unconstitutional. If these rights therefore may not be inveighed by state or local law, it is not open to debate but that *as such* they are immune from the ban of injunction. It is needless to undertake any further restatement of the doctrines and principles enumerated by the cases just cited. Of equal importance in the exposition of the controlling legal philosophy on these fundamental questions are the more recent decisions of our United States Supreme Court in *Milk Wagon Drivers Union, &c.,* v. *Meadowmoor Dairies, 61 Sup. Ct. Rep. 552,* and *A. F. of L. et al.* v. *Swing et al., 61 Sup. Ct. Rep. 568,* which had not been decided when the Vice-Chancellor considered the instant case. Nor shall we attempt to paraphrase these holdings except to say that in the first case, by a divided vote, a majority of the judges in the United States Supreme Court held that state courts may 'enjoin acts of picketing in themselves peaceful when they are enmeshed with contemporaneously violent conduct which is concededly outlawed;' in the second case a majority of the same court reversed a preliminary injunction which banned picketing of an establishment where, as here, there was no dispute between the management and its immediate employes and the picketing was done by non-employes who were members of a particular union. It follows then that the proposition often referred to as the 'no strike, no picketing' rule no longer has any efficacy. *Cf. E. L. Kerns Co.* v. *Landgraf, 128 N. J. Eq. 441."*

That case is controlling herein and it makes no difference whether the complainant corporation be considered an entirely independent company, as held by the Vice-Chancellor, or whether it be considered a subsidiary of the New York company or the *alter ego* of Schwartz, as contended by the appellants.

The decree under review is reversed.

*For affirmance*—None.

*For reversal*—The CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.